**KUTAK ROCK LLP**
Jeremy S. Williams (VSB No. 77469)
Adolyn C. Wyatt (VSB No. 97746)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone: (804) 644-1700
jeremy.williams@kutakrock.com
adolyn.wyatt@kutakrock.com
*Counsel to Peter J. Barrett, Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| DAVID WAYNE SCHNEIDER, | ) | Case No. 21-30347 (KLP) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| PETER J. BARRETT, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. _____ |
| | ) | |
| COMMONWEALTH OF VIRGINIA, DEPARTMENT OF CRIMINAL JUSTICE SERVICES, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JACKSON MILLER, SOLELY IN HIS CAPACITY AS DIRECTOR OF VIRGINIA DEPARTMENT OF CRIMINAL JUSTICE SERVICES, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID W. SCHNEIDER, TRUSTEE FOR THE ZIMMERMAN REVOCABLE TRUST, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GARY X. LOVATT, INDVIDUALLY AND AS TRUSTEE FOR THE ZIMMERMAN REVOCABLE TRUST, | ) | |

|  | ) |
| and | ) |
|  | ) |
| VINCE S. DONOGHUE, COMMONWEALTH ATTORNEY OF ESSEX COUNTY, | ) ) |
|  | ) |
| and | ) |
|  | ) |
| MICHAEL M. SHAHINIAN, INDIVIDUALLY AND AS TRUSTEE FOR THE ZIMMERMAN REVOCABLE TRUST, | ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## COMPLAINT

Peter J. Barrett, Chapter 7 Trustee for the Bankruptcy Estate of David Wayne Schneider ("Trustee"), by counsel, files this Complaint pursuant to, among other provisions, 11 U.S.C. §§ 542, 544, 549 and 550, Virginia Code §§ 55.1-400 through 403, and Rule 7001 of the Federal Rules of Bankruptcy Procedure to recover certain transfers made to the Zimmerman Revocable Trust (the "Trust") and the Commonwealth of Virginia, Department of Criminal Justice Services ("DCJS") and for damages related thereto.  In support thereof, the Trustee states as follows:

## PARTIES

1.    On February 2, 2021 (the "Petition Date"), David Wayne Schneider (the "Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in this Court.  The Debtor was the original trustee of the Trust.

2.    The Trustee was appointed to administer the Debtor's bankruptcy estate and continues to serve as trustee in this case.

3.    Defendant Gary X. Lovatt ("Lovatt") is the former alleged trustee of the Trust and a resident of Virginia.

2

4.      Defendant Michael M. Shahinian ("Shahinian" and together with Lovatt, referred to hereinafter in their alleged capacities as either a trustee of the Trust or collectively, as the "Zimmerman Trustees") is an insider of the Debtor, is the current alleged trustee of the Trust and a resident of Virginia.

5.      Defendant DCJS is governmental agency of the Commonwealth of Virginia.

6.      Defendant Jackson Miller is the current director of DCJS.

## JURISDICTION AND VENUE

7.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (F).

8.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

9.      This Court is the proper venue pursuant to 28 U.S.C. § 1409.

10.      This Court has personal jurisdiction over all necessary parties pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

## FACTS

11.      On or around October 12, 2011, the Debtor created the Trust pursuant to the Zimmerman Revocable Trust Agreement Dated October 12, 2011 (the "Trust Agreement").  A copy of the Trust Agreement is attached hereto as **Exhibit A.**

12.      The Debtor was the settlor of the Trust and the original trustee of the Trust. The Trust exists solely for the benefit of the Debtor.

13.      Pursuant to a Deed of Bargain and Sale dated October 12, 2011, various family members of the Debtor, which inherited certain real property in Essex County, as more particularly described in **Exhibit B** attached hereto (the "Property"), transferred the Property to the Debtor as Trustee.

14.     Pursuant to a Deed of Gift dated September 17, 2013, the Debtor transferred the Property from the Trust to himself individually.

15.     Pursuant to a Deed dated October 1, 2015, the Debtor then transferred the Property from himself, individually, back to himself as trustee for the Trust.

16.     Pursuant to a Deed of Gift dated March 11, 2016, the Debtor as trustee transferred the Property to Lovatt individually and as successor trustee for the Trust.

17.     Pursuant to a Deed of Gift dated July 6, 2021, at the direction of the Debtor, Lovatt transferred the Property from himself individually and as trustee for the Trust, to Shahinian, individually and as a successor trustee for the Trust.

18.     No documents or agreements are believed to exist appointing either of the Zimmerman Trustees, as successor trustees.

19.     On March 11, 2016, Lovatt, as alleged trustee for the Trust and individually, granted DCJS a lien on the Property in an amount not to exceed $8,400,000.00 pursuant to a Deed of Trust – Joint Tenants dated March 11, 2016 ("First Deed of Trust").

20.     On July 30, 2021, Shahinian, as alleged trustee for the Trust and individually, granted DCJS a lien on the Property in an amount not to exceed $8,400,000.00 pursuant to a Deed of Trust – Joint Tenants dated July 30, 2021 ("Second Deed of Trust" and together with the First Deed of Trust, the "Deeds of Trust").

21.     Vince S. Donoghue is the trustee under the Deeds of Trust.

22.     The amount of the liens secured by the Deeds of Trust is dependent upon the number of outstanding bail bonds issued by the related bail bondsman.  The extent of any valid liens which may exist with respect to the Deeds of Trust is currently unknown.

23.     Prior to 2016, the Debtor did operate as a licensed bail bondsman.  However, on January 27, 2016, the Debtor was convicted of multiple counts of tax fraud and his license was

revoked.  Since that time, the Debtor has not been authorized to conduct business as a licensed bail bondsman in Virginia.

24.    Pursuant to the Trust Agreement, the "Trustee shall retain and administer the assets in trust in accordance with this Agreement."  Such obligations include the requirement that the trustee under the Trust distribute assets necessary to satisfy the Debtor's obligations.

25.    Given the nature of the Trust, its corpus constitutes an asset of the Debtor's estate pursuant to 11 U.S.C. § 541.

26.    The only other authorized use for the assets of the Trust is the use of real property for the Debtor's bail bonding business.  Since approximately January of 2016, the Debtor has not had a "bail bonding business."  As such and since that time, the only authorized use for the Trust assets is for the satisfaction of the Debtor's obligations.

27.    Notwithstanding such limitations, Lovatt granted DCJS a lien on the Property in contravention of the terms of the Trust.

28.    Similarly, Shahinian granted DCJS a lien on the Property in contravention of the terms of the Trust.

29.    Under various theories, the Deeds of Trust should be avoided, the Trust should be dissolved and the Property should be turned over to the estate.

## COUNT I

### Avoidance of Fraudulent Transfer under Va. Code § 55.1-400

30.    The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

31.    The Transfer of the Property from the Debtor individually to himself as Trustee was done with the intent to hinder, defraud, or delay his creditors.

32.     The Debtor knew or should have known at the time of such Transfer that he was insolvent, and/or would be made insolvent thereby.

33.     No valuable consideration was provided by any subsequent transfers of the Property.

34.     The Transfer was made with an actual intent to hider, delay, or defraud the creditors of the Debtor.

35.     The Transfer is avoidable as fraudulent pursuant to Va. Code § 55.1-400.

**WHEREFORE**, the Trustee requests the Court to enter an order under 11 U.S.C. § 544 and Va. Code § 55.1-400: (i) avoiding as fraudulent, the transfer of the Property from the Debtor individually to himself as trustee for the Trust and any subsequent transfers and (ii) awarding any further relief as the Court deems just and proper.

<u>**COUNT II**</u>

**Avoidance of Voluntary Conveyance under Va. Code § 55.1-401**

36.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

37.     The transfer of the Property by the Debtor as trustee to Lovatt individually and as a Zimmerman Trustee was a transfer of an asset of the Debtor.

38.     At the time the transfer was made, the Debtor was insolvent, or the Debtor was made insolvent thereby, such that the Debtor was unable to meets his debts and obligations as they matured or came due or, in the alternative, the Debtor was thereby left with insufficient assets with which to meet his debts and obligations as they came due.

39.     Lovatt knew or should have known at the time of the transfer, that the Debtor was insolvent, and/or would be made insolvent thereby, but accepted the conveyance of the Property for his own gain and to the detriment of the Debtor's creditors.

40.     The transfer to Lovatt, made while the Debtor was insolvent or made such that it rendered the Debtor insolvent, is voidable pursuant to Va. Code § 55.1-401.

**WHEREFORE**, the Trustee requests the Court to enter an order under 11 U.S.C. § 544 and Va. Code § 55.1-401: (i) avoiding the transfer of the Property by the Debtor as trustee to Lovatt individually and as a Zimmerman Trustee and any subsequent transfers and (ii) awarding any further relief as the Court deems just and proper.

<u>**COUNT III**</u>

**Avoidance of Voluntary Conveyance under Va. Code § 55.1-401**

41.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

42.     The transfer of the Property by Lovatt individually and as a Zimmerman Trustee to Shahinian individually and as a Zimmerman Trustee was a transfer of an asset of the Debtor.

43.     At the time the transfer was made, the Debtor was insolvent, or the Debtor was made insolvent thereby, such that the Debtor was unable to meets his debts and obligations as they matured or came due or, in the alternative, the Debtor was thereby left with insufficient assets with which to meet his debts and obligations as they came due.

44.     Shahinian knew or should have known at the time of the transfer that the Debtor was insolvent, and/or would be made insolvent thereby, but accepted the conveyance of the Property for his own gain and to the detriment of the Debtor's creditors.

45.     The transfer to Shahinian, made while the Debtor was insolvent or made such that it rendered the Debtor insolvent, is voidable pursuant to Va. Code § 55.1-401.

**WHEREFORE**, the Trustee requests the Court to enter an order under 11 U.S.C. § 544 and Va. Code § 55.1-401: (i) avoiding the transfer of the Property by Lovatt individually and as a

Zimmerman Trustee to Shahinian individually and as a Zimmerman Trustee and any subsequent transfers and (ii) awarding any further relief as the Court deems just and proper.

## COUNT IV

### Avoidance of Voluntary Conveyance under Va. Code § 55.1-401

46.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

47.     The granting of the Deeds of Trust to DCJS by Lovatt individually and as a Zimmerman Trustee and Shahinian individually and as a Zimmerman Trustee constitutes a transfer of an asset of the Debtor.

48.     At the time the transfer was made, the Debtor was insolvent, or the Debtor was made insolvent thereby, such that the Debtor was unable to meets his debts and obligations as they matured or came due, or in the alternative, the Debtor was thereby left with insufficient assets with which to meet his debts and obligations as they came due.

49.     DCJS knew or should have known at the time of the transfer that the Debtor was insolvent, and/or would be made insolvent thereby, but accepted the conveyance of the Property for its own gain and to the detriment of the Debtor's creditors.

50.     The transfer to DCJS, made while the Debtor was insolvent or made such that it rendered the Debtor insolvent, is voidable pursuant to Va. Code § 55.1-401.

**WHEREFORE**, the Trustee requests the Court to enter an order under 11 U.S.C. § 544 and Va. Code § 55.1-401: (i) avoiding the transfer of the liens of DCJS granted pursuant to the Deeds of Trust and (ii) awarding any further relief as the Court deems just and proper.

## COUNT V

### Recovery of Attorneys Fee Pursuant to Va. Code § 55.1-403

51.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

52.     To the extent any transfers are avoided pursuant to Va. Code § 55.1-400 or -401, the Trustee is entitled to the recovery of reasonable attorneys' fees for bringing such action.

**WHEREFORE**, the Trustee requests the Court to enter an order under 11 U.S.C. § 544 and Va. Code § 55.1-403: (i) awarding the Trustee reasonable attorneys' fees incurred in connection with this action and (ii) awarding any further relief as the Court deems just and proper.

## COUNT VI

### Breach of Fiduciary Duty as to Lovatt

53.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

54.     As a trustee under the Trust, Lovatt owed a fiduciary duty of care to the Debtor, the Trust and, upon Debtor's insolvency, to his creditors.  This fiduciary duty obligated Lovatt to act in accordance with the terms of the Trust, to act in good faith, in an informed manner, and with the amount of care an ordinarily prudent person would use in a like position and under similar circumstances.

55.     Lovatt breached his fiduciary duty of care, willfully and in bad faith, when he authorized the granting of a lien as set forth in the First Deed of Trust in favor of DCJS, especially in light of the fact that the Debtor's license had been revoked.

56.     Lovatt further breached his fiduciary duty of care, willfully and in bad faith, when he caused the Property to be transferred to Shahinian in an individual capacity.

57.     As a result of these breaches, the Trustee is entitled to recover the damages suffered by the Debtor in an amount to be proven at trial.

**WHEREFORE**, the Trustee requests the Court to enter an order: (i) holding Lovatt liable in damages or otherwise for his breach of fiduciary duty of care as a Zimmerman Trustee and (ii) awarding any further relief as the Court deems just and proper.

<u>**COUNT VII**</u>

**Breach of Fiduciary Duty as to Shahinian**

58.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

59.     As a trustee under the Trust, Shahinian owed a fiduciary duty of care to the Debtor, the Trust and, upon Debtor's insolvency, to his creditors.  This fiduciary duty obligated Shahinian to act in accordance with the terms of the Trust, to act in good faith, in an informed manner, and with the amount of care an ordinarily prudent person would use in a like position and under similar circumstances.

60.     Shahinian breached his fiduciary duty of care, willfully and in bad faith, when he authorized the recording of the Second Deed of Trust in favor of DCJS, especially in light of the fact that the Debtor's license had been revoked.

61.     Shahinian further breached his fiduciary duty of care, willfully and in bad faith, when he allowed the Property to be transferred to himself in an individual capacity.

62.     As a result of these breaches, the Trustee is entitled to recover the damages suffered by the Debtor in an amount to be proven at trial.

**WHEREFORE**, the Trustee requests the Court to enter an order: (i) holding Shahinian liable in damages or otherwise for his breach of fiduciary duty of care as a Zimmerman Trustee and (ii) awarding any further relief as the Court deems just and proper.

## COUNT VIII

### Declaratory Judgment Avoiding All Transfers

63.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

64.     In the alternative and pursuant to the Trust Agreement, a successor trustee could be appointed only by the then-current trustee executing and delivering to such named successor trustee a written instrument regarding the same.

65.     The Debtor was the only named trustee under the Trust Agreement and no written instrument was ever executed appointing either of the Zimmerman Trustees as successor trustees under the Trust Agreement.

66.     As such, the Zimmerman Trustees lacked any authority to either transfer the Property or encumber the Property.

67.     DJCS knew or should have known that the liens allegedly granted in the Deeds of Trust were not authorized given the terms of the Trust Agreement.

68.     Given that the Zimmerman Trustees were not authorized by the Trust Agreement, the Deeds of Trust should be deemed invalid.

69.     In addition, given that the Trust serves no purpose other than satisfying the obligations of the Debtor at this point in time and the Debtor is in bankruptcy, the Court should order the Trust dissolved and the assets returned to the Debtor's estate for administration by the Trustee in conformity with the sole remaining purpose of the Trust.

**WHEREFORE**, the Trustee requests the Court to enter an order: (i) deeming the transfers of the Property authorized by the Zimmerman Trustees as done without authority; (ii) deeming the transfers of the Property and the granting of the liens as void; (iii) dissolving the

Trust and remitting the corpus of the Trust to the Debtor's estate, and (iv) awarding any further relief as the Court deems just and proper.

## COUNT IX

**Declaratory Judgment Deeming the DCJS Liens Void and the Trust Dissolved**

70.     The Trustee reasserts and realleges the facts contained in the paragraphs above as if they were fully set forth herein.

71.     The Trust existed for one purpose – satisfaction of the obligations of the Debtor.

72.     The Trust Agreement originally permitted that goal to be satisfied by allowing the Debtor to use its corpus as collateral for his bail bonding business.

73.     When the Debtor lost his license, however, it was no longer possible for the corpus of the Trust to be used for such purpose and accordingly, the corpus should have been reserved exclusively for the payment of the Debtor's obligations.

74.     Despite this fact, the Debtor and the Zimmerman Trustees engaged in a scheme where they transferred the Property to friends and business partners, so the Debtor could continue to operate as a *de facto* bail bondsman.  The Debtor then continued to control the Trust, notwithstanding the alleged appointment of successor trustees.

75.     Under his instruction, the Zimmerman Trustee then granted liens to DCJS in contravention of the Trust Agreement.

76.     DJCS knew or should have known that such liens were authorized given that it was the very agency which had revoked the Debtor's license.

77.     Given that the liens given to DCJS were not authorized by the Trust Agreement and that DCJS knew or should have known the same, the Deeds of Trust should be deemed invalid.

78.     In addition, given that the Trust serves no purpose other than satisfying the obligations of the Debtor at this point in time and the Debtor is in bankruptcy, the Court should order the Trust dissolved and the assets returned to the Debtor's estate for administration by the Trustee in conformity with the sole remaining purpose of the Trustee.

**WHEREFORE**, the Trustee requests the Court to enter an order: (i) holding the Deeds of Trust void as invalid under the Trust Agreement; (ii) dissolving the Trust and remitting the corpus of the Trust to the Debtor's estate, and (iii) awarding any further relief as the Court deems just and proper.

**PETER J. BARRETT, TRUSTEE**

By: /s/ *Jeremy S. Williams*

**KUTAK ROCK LLP**
Jeremy S. Williams (VSB No. 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone:  (804) 644-1700
Facsimile:   (804) 783-6192
jeremy.williams@kutakrock.com
*Counsel to Peter J. Barrett, Trustee*

**EXHIBIT A**

## ZIMMERMAN REVOCABLE TRUST AGREEMENT
### Dated October 12, 2011

THIS REVOCABLE TRUST AGREEMENT is made this 12th day of October, 2011, by and between D. Wayne Schneider, of the County of Chesterfield, Virginia, desiring to create a trust as settlor, and David Wayne Schneider of the County of Chesterfield, Virginia, the original trustee.

1.   Creation of Trust.

    1.   References. This trust shall be referred to as the Zimmerman Revocable Trust dated October 12, 2011. David Wayne Schneider in his position as the settlor of this trust will be referred to as the "Settlor." The original trustees, and any other trustee or trustees serving under this Agreement, will be referred to collectively as the "Trustees."

    2.   Assets in Trust. The Settlor has transferred to the Trustee the assets listed on the attached schedule, and the Trustee holds such assets in trust as Trustee. The Settlor has also listed the Trustee as beneficiary of these life insurance policies and other accounts, if any, listed on such schedule. The Settlor reserves the right to transfer from time to time other assets to the Trustee during the Settlor's lifetime, and the right to transfer other assets to the Trustee by reason of the Settlor's death. The Trustee shall retain and administer the assets in trust in accordance with this Agreement.

    3.   During Settlor's Lifetime. During the Settlor's lifetime, the Trustee shall accumulate the income from and retain the principal of the Trust, except as the Settlor may otherwise direct. The Trustee is authorized to use any real estate owned by the Trust for purposes of the business of the Settlor, including his bail bonding business. Settlor recognizes there is a degree of risk involved with the use of the real estate for such purposes, but after deliberate consideration, authorizes its use for said purposes. If at any time in the Trustee's opinion, the Settlor is unable to so direct, the Trustee may distribute as much of the net income or principal of the Trust as the Trustee considers appropriate to provide for the Settlor's support and health, and to satisfy the Settlor's obligations.

    4.   Upon Settlor's Death. Upon the death of the Settlor, the Trustee shall accumulate the income from and retain the principal of the Trust and may distribute as much of the net income or principal of the Trust as the Trustee considers appropriate to provide for the support and health of the following alternate beneficiaries:

1

4.1.    To David Irvin Bryson, if he survives the Settlor.

4.2.    If David Irvin Bryson predeceases me, I name John L. Schneider and Myrna W. Schneider, or the survivor, as the alternate beneficiaries under the Trust.

4.3.    If John L. Schneider and Myrna W. Schneider predecease me, I name John L. Schneider, III, Teresa Schneider Heath and Timothy Samuel Schneider, or the survivors, as the alternate beneficiaries under the Trust.

Takers in Default. If at any time there is no living beneficiary designated to receive the income under this Trust, the Trustee shall distribute the Trust assets to the following beneficiaries: Nathan Aubrey Heath, John Wesley Heath, John L. Schneider IV, Erika S. Ford, Erin S. Hyman, Timothy S. Schneider Jr and Dylan M. Schneider.

2.    Interests Vesting in Certain Beneficiaries.

1.    Beneficiaries Under Age. If a beneficiary entitled to receive assets under this Trust Agreement is under age thirty (30), the Trustee may retain such assets in trust and thereafter distribute to or for the benefit of such beneficiary as much of the net income or principal of the trust as the Trustee considers appropriate to provide for such beneficiary's support, health, and education. In exercising its discretion, the Trustee may but shall not be required to consider other income or property available to any such beneficiary from any other source. When the beneficiary reaches age thirty (30), the Trustee shall distribute the trust assets to the beneficiary. If the beneficiary dies before reaching that age, the Trustee shall distribute the trust assets to the beneficiary's estate.

2.    Beneficiaries Under Impairment. If a beneficiary entitled to receive assets under this Trust Agreement is unable to adequately manage financial affairs by reason of a physical or mental impairment (as determined by the Trustee), the Trustee may retain such assets in trust and thereafter distribute to or for the benefit of such beneficiary as much of the net income or principal of the trust as the Trustee considers appropriate to provide for the beneficiary's support, health, and education. In exercising its discretion, the Trustee may but shall not be required to take into account any other assets available to such beneficiary from any other source. The Trustee shall not be required to seek a judicial determination of the ability of a beneficiary to manage financial affairs or the existence of any physical or mental impairment. When the beneficiary is able to adequately manage financial affairs (as determined by the Trustee), the Trustee shall distribute the trust assets to the

2

beneficiary. If the beneficiary dies before such trust is terminated, the Trustee shall distribute the trust assets to the beneficiary's estate.

3.  <u>Vesting Not Postponed</u>. The provisions of this Section shall not postpone vesting of any interest in a beneficiary.

3.  <u>Trustee Provisions</u>.

3.1. <u>Successor Trustee</u>. If the original Trustee fails to serve as Trustee, Gary X. Lovette shall serve as Successor Trustee.

3.2. <u>Trustee's Appointment of Successor</u>. If at any time no person or entity is named above to succeed any Trustee, such Trustee may appoint any individual (other than a then income beneficiary, or the spouse or issue of any then income beneficiary) or trust corporation as a successor Trustee to himself or herself by executing and delivering to such named successor Trustee a written instrument.

3.3. <u>Beneficiaries' Appointment of Successor</u>. If upon the failure to serve of any then serving Trustee no successor Trustee is appointed under either of the above two paragraphs, a majority of the adult beneficiaries authorized to receive trust income, or if there are none, a majority of the adult persons responsible for any minor beneficiaries authorized to receive trust income, may appoint any individual (other than a then income beneficiary, or the spouse or issue of any then income beneficiary) or trust corporation as a successor Trustee. If no successor Trustee is so appointed, a successor corporate Trustee may be appointed as provided by law.

3.4. <u>Fiduciary Powers</u>. In addition to the powers granted by law, the Settlor hereby grants the Trustee those powers set forth in Section 64.1-57 of the Code of Virginia, as such section may be amended from time to time, and the Settlor hereby incorporates that Code Section by this reference. If any asset donated to any trust under this Trust does not meet the standard in Virginia as a suitable fiduciary investment, the Trustee may nevertheless retain the asset for as long as the Trustee deems appropriate. The Trustee may borrow money for any purpose deemed in the best interests of any trust under this Trust (including borrowing from the Trustee or any affiliate thereof), and secure such borrowings with any assets of such trust

3.5. <u>Investment Advisor.</u> In managing the investments of any trust, the Trustee may employ investment advisors or other specialists. In addition, the Trustee shall

3

have the authority to appoint an investment manager or managers to manage all or any part of the trust assets, and to delegate investment discretion to the investment manager or managers. Any appointment of an investment manager shall include the power to acquire and dispose of trust assets. Any compensation for an investment advisor, manager or other specialist shall be considered an expense of administering the trust. The Trustee may rely upon the investment recommendations or decisions of an advisor or manager without liability to any beneficiary.

3.6.    <u>Termination of Small Trusts</u>. If at any time the size of any trust under this Trust is so small that, in the Trustee's opinion, the trust is uneconomical to administer, the Trustee may terminate the trust and distribute the assets to the person or persons then authorized to receive trust income, in such shares as the Trustee may consider appropriate.

3.7.    <u>Allocation of Assets</u>. Assets allocated to one trust or share may be of different character or have different income tax bases than assets allocated to another trust or share.

3.8.    <u>Change of Trust Situs</u>. If at any time, in the Trustee's opinion, it is in the best interests of the beneficiaries for the situs of any trust to be located in a jurisdiction other than Virginia, the Trustee may move the trust situs and, to the extent appropriate, the trust assets to such other jurisdiction. The Trustee may elect that the law of such other jurisdiction shall govern the administration of the trust to the extent appropriate.

3.9.    <u>Fiduciary Discretion</u>. The powers and discretion granted to the Trustee are exercisable only in a fiduciary capacity and may not be used to enlarge or shift any beneficial interest except as an incidental consequence of the discharge of fiduciary duties. The Trustee may make tax elections without regard to the relative interests of any beneficiaries and may but shall not be required to make equitable adjustments among beneficiaries.

3.10.    <u>Restrictions on Individual Trustees</u>. No individual serving as Trustee shall have a voice in a discretionary decision to distribute income or principal of a trust in order to discharge a legal obligation of the individual or for the individual's pecuniary benefit, unless necessary solely for the individual's support, health, or education.

3.11.    <u>Appointment of Co-Trustee</u>. Any then serving Trustee may, if it considers it appropriate, appoint another person or trust corporation to serve as Co-Trustee, by

4

written instrument. Such appointed Co-Trustee shall have and shall exercise the duties and the authorities set forth in such written instrument. The appointed Co-Trustee shall serve only as long as the then serving Trustee.

3.12. <u>Compensation</u>. Any Trustee shall receive compensation for its services for which it is willing to undertake similar services for others at the time such services are rendered.

3.13. <u>Signature of Trustee</u>. The signature of any then serving Trustee shall be sufficient to execute proxies or powers of attorney; to vote any securities; to represent the Trustee as the holder or owner of any securities or other assets; to execute stock powers or other endorsements of securities or negotiable instruments; and to effect any assignment, transfer, or delivery of any trust assets. No person or entity dealing with the Trustee shall be required to inquire into any Trustee's authority to enter into any transaction or to see to the application of the proceeds of any transaction.

3.14. <u>Resignation of Trustee</u>. Any Trustee may resign by written notice delivered to the adult beneficiaries authorized to receive trust income and the parents or other adult persons responsible for any minor beneficiaries authorized to receive trust income. The resignation shall be effective upon the acceptance of Trustee duties by the successor Trustee appointed in accordance with the provisions of this Trust.

3.15. <u>Actions of Predecessor</u>. Any Successor Trustee shall possess and exercise all powers, immunities, and authority conferred upon the original Trustee. No Successor Trustee shall be responsible for or required to inquire into the actions or omissions of any predecessor Trustee.

4. <u>Reserved Rights</u>.

4.1. <u>Additional Contributions</u>. The Settlor reserves for the Settlor and any other person the right to make insurance policies payable to the Trustee and to transfer acceptable assets to the Trustee. Assets transferred to the Trustee by a third person may be withdrawn by such person at any time during the third party's lifetime, and the Trustee shall segregate the assets for accounting purposes, but need not separate them physically.

4.2. <u>Revocation and Amendment</u>. The Settlor reserves the right to revoke or amend this Trust by a writing other than a will signed by the Settlor and delivered to the Trustee during the Settlor's lifetime. If this Trust is revoked by the Settlor, but at the Settlor's death an insurance policy is payable to the Trustee, the Trustee shall distribute the

5

net proceeds of the policy to the Settlor's estate. The duties or compensation of the Trustee shall not be changed without the consent of the Trustee.

5. <u>Miscellaneous</u>.

    1.    <u>Definitions</u>. For purposes of this Trust:

      1.1.   <u>Support</u>. "Support" shall be synonymous with "maintenance," shall not be limited to the bare necessities of life, and shall be the same as "support and maintenance in reasonable comfort.

      1.2.   <u>Health</u>. "Health" shall include but not be limited to medical, dental, hospital and nursing expenses and expenses of invalidism.

      1.3.   <u>Education</u>. "Education" shall include but not be limited to:

        a.   Expenses for study at any accredited educational or vocational institution of the beneficiary's choice for any period of time which is advantageous to the beneficiary, as determined by the Trustee in the Trustee's discretion; and

        b.   Reasonable living and travel expenses of the beneficiary relating to such study, as determined by the Trustee in the Trustee's discretion.

    2.    <u>Spendthrift Provisions</u>. To the extent permitted by law, and except as otherwise provided herein, neither the principal nor the income of any trust hereunder shall be liable for the debts of any beneficiary or subject to alienation or anticipation by any beneficiary.

    3.    <u>Adoption</u>. A person related by or through adoption shall take under this Trust as if related by or through birth, except that a person adopted after reaching age twenty-one (21) and descendants of such persons shall not so take.

    4.    <u>Construction of Terms</u>. This Trust Agreement is made or delivered in Virginia. Where appropriate to the context, pronouns or other terms expressed in one number and gender shall be deemed to include the other numbers and genders. The underlined headings are for convenience and shall not affect interpretation.

    5.    <u>Multiple Counterparts</u>. This Trust Agreement may be signed in more than one counterparts, each of which shall be an original.

WITNESS the following signature and seal.


_____ (SEAL)
D. Wayne Schneider
Settlor and Trustee



The terms of this Trust Agreement are accepted.


_____
D. Wayne Schneider
Trustee


_____

Trustee



COMMONWEALTH OF VIRGINIA        )
                                )
COUNTY OF CHESTERFIELD          )

The foregoing instrument was sworn to and acknowledged by me this 12th day of October, 2011, by D. Wayne Schneider.


_____
Notary Public

D. GAIL HOLSTROM
NOTARY
PUBLIC
REG #: 281023
MY COMMISSION
EXPIRES
07/31/2016
STATE OF VIRGINIA

8

## **SCHEDULE TO TRUST AGREEMENT**

The following assets have been contributed to the Trust:

> The sum of $10.00 cash delivered to my Trustee.

> All of my interests in the real estate, wheresoever located and situated, including but not limited to real estate in Essex County, Virginia as may be evidenced by a deed thereto, whether recorded or not.

> All of my interests in the real estate, wheresoever located and situated, including but not limited to real estate in Henrico County, Virginia as may be evidenced by a deed thereto, whether recorded or not.

> All of my interests in the real estate, wheresoever located and situated, including but not limited to real estate in Chesterfield County, Virginia as may be evidenced by a deed thereto, whether recorded or not.

The following life insurance policies and other accounts list the Trust as beneficiary thereof:

> None.

9

## EXHIBIT B

ALL that certain tract or parcel of land lying on U.S. Route 360 at Henley's Fork in Central Magisterial District of Essex County, Virginia;

DESCRIBED AND SHOWN on that certain plat of survey entitled "Plat of Survey of Three (3) Parcels of Land Located on the South Line of State Route No. 619, the West and East Lines of U.S. Route No. 360 and the West and East Lines of State Route No. 691, Comprising Tax Parcel No. 36-103, Central District, Essex County, Virginia", dated May 6, 2013, made by ASA Surveying & Mapping, a copy of which plat was recorded as Instrument Number 130000734 on June 13, 2013.

### AND PREVIOUSLY DESCRIBED AS:

"ALL that certain tract or parcel of land lying on U.S. Route 360 at Henley's Fork in Central Magisterial District of Essex County, Virginia, consisting of 14.21 acres, more or less.

LESS AND EXCEPT that certain lot, piece or parcel of land as shown and recorded in Deed Book 127 at page 135, in the Clerk's Office, Circuit Court, Essex County, Virginia.

LESS AND EXCEPT that certain lot, piece or parcel of land as shown and recorded in Deed Book 146 at page 552, in the Clerk's Office, Circuit Court, Essex County, Virginia."

BEING the same real estate conveyed to D. Wayne Schneider, Trustee of the Zimmerman Revocable Trust, by deed dated October 12, 2011, from Joseph P. Wilkerson, et als, recorded in the aforesaid Clerk's Office as Instrument Number 110001463; and subsequently conveyed to David Wayne Schneider by deed from D. Wayne Schneider, Trustee of the Zimmerman Revocable Trust in Instrument Number 13-0001212.